IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TIMOTHY P. GARCIA,

        Plaintiff,

  vs.                                    No. CIV 07-730 MV/LFG

JOHN P. DANTIS and
RONALD C. TORRES,

        Defendants.

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[1]

This is a *pro se, in forma pauperis* civil rights action brought pursuant to 42 U.S.C. § 1983. The action was originally filed by Plaintiff Timothy P. Garcia ("Garcia") in New Mexico district court on or about February 20, 2007 and was subsequently removed to federal court. Garcia alleges in his complaint that Defendants violated his civil rights in various ways while he was incarcerated at the Metropolitan Detention Center ("MDC") for Bernalillo County.

### Procedural Background

Defendants John P. Dantis ("Dantis") and Ronald C. Torres ("Torres") were not served with the complaint until July 1, 2007. On July 31, 2007, Defendants filed a Notice of Removal [Doc. 1] and the case was removed to this Court. On the same day they filed their Notice of Removal, Defendants Dantis and Torres also filed a Motion to Dismiss on the Basis of Qualified Immunity and

---

[1] Within ten (10) days after a party is served with a copy of this legal analysis and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the analysis and recommendations. If no objections are filed, no appellate review will be allowed.

on Other Grounds [Doc. 3], along with a Motion to Stay Discovery [Doc. 4].

In their Motion to Dismiss, Defendants state that Garcia is no longer incarcerated at the MDC but has been transferred to the Lea County Correctional Facility ("LCCF"). The certificate of service states that Defendants served the motion on Garcia at his LCCF address.

As of August 29, 2007, Garcia had not filed a Response to the Motion to Dismiss. On that date, the Court entered an Order to Show Cause [Doc. 11], noting that the time for responding to Defendants' motion had elapsed and directing Garcia to show cause why the case should not be dismissed, by informing the Court of his present address and by filing a Response to Defendant's Motion to Dismiss. The Clerk of Court was directed to serve the Order to Show Cause on Garcia at the MDC address which was still his address of record, as well as at his LCCF address.

On September 13, 2007, Garcia filed his Response [Doc. 13] to the Order to Show Cause, along with his Response [Doc. 15] to Defendants' Motion to Dismiss. Defendants filed their Replies [Docs. 17, 18] on September 17, 2007. For the reasons given below, the Court recommends that Defendants' Motion to Dismiss be granted, and that their Motion to Stay be denied as moot.

### Plaintiff's Claims

In his complaint, Garcia alleges that he was subjected to cruel and unusual punishment at MDC in violation of his Eighth Amendment rights. He cites several examples of alleged mistreatment, as follows:

(1) Overcrowding: Three or four inmates were housed in a cell meant for two persons, and insufficient staffing led to frequent lockdowns; (2) Nutrition: Food service rations were too small for an adult; (3) Price-gouging: The prices in the canteen were too high, and the canteen would not give Garcia toothpaste with the result that he now has bleeding gums; (4) Medical care: Garcia tested

positive for tuberculosis but was not treated for this condition. In addition, the medical department rarely did sick call for inmates, and it charged for medical care.

Garcia asserts that the above actions constitute cruel and unusual punishment, and he asks for $45,000 in compensatory damages. He also seeks an injunction directing MDC to feed inmates properly and provide adequate space for them, without overcrowding.

## Standards for Determination of Motion to Dismiss

In considering a motion to dismiss, the Court will accept all well-pleaded factual allegations in the complaint as true and will draw all reasonable inferences from those facts in favor of plaintiff. Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 806 (10th Cir. 1999). However, as the Supreme Court recently stated in reformulating the rule for review of complaints on a defendant's motion for failure to state a claim:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . .

Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007).

*Pro se* pleadings are to be construed liberally. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972). However, "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Although plaintiff need not precisely state each element of his claims, he must plead minimal factual allegations on those material elements that must be proved.

> [C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based . . . . This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted. Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations.

Hall v. Bellmon, *supra*, at 1110.

## Discussion

Defendants' Motion to Dismiss addresses each of Garcia's claims, and Defendants raise other defenses as well. They argue that: (1) Garcia failed to allege personal involvement by the named Defendants; (2) his claims for injunctive relief are moot; (3) he has no standing to bring claims regarding constitutional rights of inmates other than himself; (4) Defendants are entitled to dismissal on the merits, or at least to qualified immunity, with respect to Garcia's claims of overcrowding, small food portions, high canteen prices, and poor medical care; and (5) Garcia failed to state a claim against these Defendants under the New Mexico Tort Claims Act.

In some instances, Garcia expands somewhat on his claims in his Response to the Motion to Dismiss. However, his arguments and averments do not meet the substance of Defendants' assertions, and the Court recommends that Defendants' Motion to Dismiss be granted.

    A.  Overcrowding

Garcia claims that he was subjected to cruel and unusual punishment due to overcrowding at MDC. He states that up to four inmates were housed in cells meant for two, and that he had "no space to walk" and it was "very difficult to move around." He alleges also that the resultant overcrowding and insufficient staffing led to frequent lockdowns. Defendants contend that Garcia

failed to state a claim on this cause of action or, alternatively, that they are entitled to qualified immunity with respect to this claim.

The Eighth Amendment's proscription against cruel and unusual punishment prohibits not only punishments which are physically barbarous, but also those which involve the unnecessary and wanton infliction of pain, or punishment grossly disproportionate to the severity of the crime. Rhodes v. Chapman, 452 U.S. 337, 345-46, 101 S. Ct. 2392, 2398-99 (1981). "[T]here are two components of an Eighth Amendment claim which must be proven to support a remedy: an objective component, the alleged deprivation must deny "the minimal civilized measure of life's necessities," . . . and a subjective component, the responsible official must have a sufficiently culpable state of mind, i.e. deliberate indifference." McClendon v. City of Albuquerque, 79 F.3d 1014, 1022 (10th Cir. 1996), *citing* Rhodes v. Chapman, *supra*, and Wilson v. Seiter, 501 U.S. 294, 299-304, 111 S. Ct. 2321, 2324-27 (1991).

The second component, deliberate indifference, does not require a finding of express intent to harm, but must involve more than ordinary lack of due care for the prisoner's interests or safety. An official " acts with deliberate indifference if its conduct (or adopted policy) disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights. Berry v. City of Muskogee, 900 F.2d 1489, 1495-96 (10th Cir. 1990).

> To sustain a claim under the Eighth Amendment based on prison conditions, including overcrowding, Plaintiff must show a deliberate indifference to his safety . . . . Plaintiff's only argument in support of this claim is that a failure to release him subjects him to overcrowded prison conditions. As a matter of law, that contention does not support a finding of deliberate indifference to his safety.

Johnson v. Fields, 21 F.3d 1121 (Table, text in Westlaw), 1994 WL 127145, at *4 (10th Cir. Apr.

6, 1994).

The same is true in the present case. In his complaint, Garcia alleges that Defendants put four people in a two-person cell; in other filings he alleges that three persons were housed in the cells. He claims further that this overcrowding resulted in his having "no space to walk," and that he feels "he can't breathe" when there are three inmates in a two-person cell. [Ex. A. to Doc. 1, at 2; Doc. 13, at 2; Doc. 15, at 2]. However, double-celling is not *per se* a violation of the Eighth Amendment. Rhodes v. Chapman, *supra.*

Garcia does not say that the overcrowding in cells at MDC led to increased violence, or poor sanitation, or other intolerable conditions. He states only that he had no space to walk and felt uncomfortable. These complaints do not rise to the level of cruel and unusual punishment, nor do they show deliberate indifference to his comfort and safety. Sharing a two-person cell with two or three other persons may not be an optimum situation for comfort and privacy. However, as the Supreme Court noted in Rhodes v. Chapman, "restrictive and even harsh conditions . . . are part of the penalty that criminal offenders pay for their offenses against society." Id., 452 U.S. at 347.

Overcrowding is not actionable under the Eighth Amendment unless it results in wanton infliction of pain or a deprivation of the "minimal civilized measure of life's necessities." While the overcrowding described by Garcia was unfortunate, it falls far short of the type of allegation necessary to state a claim of cruel and unusual punishment.

Garcia also claims that he and the other inmates were often kept in lockdown because of the overcrowding and short staffing problems. He says that during two lockdown periods, on January 20, 2007 and January 23, 2007, inmates were not allowed to shower or to make phone calls. He does not state how long these two periods of lockdown lasted, nor how many other times he was subjected

to lockdown during his incarceration at MDC.

This falls short of a presentation of facts sufficient to support a claim, under the objective component, that lockdowns at MDC caused Garcia serious deprivation of basic needs. In addition, it has been found that failure to institute a lockdown, when such is called for, can be evidence of deliberate indifference on the part of prison officials. *See*, Berry v. City of Muskogee, *supra*. The Court finds that Garcia has not alleged sufficient facts, either in his complaint or in his submission in opposition to Defendants' Motion to Dismiss, with regard to his claim of short staffing and lockdowns.

The Court recommends that Defendants' Motion to Dismiss be granted with respect to the claim of an Eighth Amendment violation based on overcrowded cells and lockdown conditions.

B.  Nutrition

Garcia next claims that food rations were too small at MDC and that inmates complained of weight loss and lack of energy. He also stated, "Food service feeds you what it wants and when it wants. No schedule." [Ex. A to Doc. 1, at 3].

"[T]he State must provide an inmate with a 'healthy habilitative environment.' This includes providing nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." Ramos v. Lamm, 639 F.2d 559, 570-71 (10th Cir. 1980). A "substantial deprivation of food" may be sufficiently serious to state a claim under the Eighth Amendment. Thompson v. Gibson, 289 F.3d 1218, 1222 (10th Cir. 2002).

In this case, Garcia does not allege a substantial deprivation of food. He simply says that the portions were small, and he alleges that some unnamed inmates complained of weight loss and lack

7

of energy. Garcia does not claim that he himself lost weight as a result of inadequate food nor that he had a lowered energy level, and he does not have standing to sue for the violation of constitutional rights of other inmates. Archuleta v. McShan, 897 F.2d 495, 497 (10th Cir. 1990) ("a section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else").

Garcia fails to allege facts showing a personal deprivation of "the minimal civilized measure of life's necessities" sufficient to establish the objective element of a claim for cruel and unusual punishment. Furthermore, there is nothing in Garcia's pleadings to indicate that Defendant Dantis or Defendant Torres knew about the alleged small food portions and failed to remedy the situation; he therefore fails to allege the subjective element of deliberate indifference.

The Court finds that Garcia fails to state a claim for constitutional violation based on alleged small food portions.

C. Allegations Regarding the Canteen

Garcia next asserts that the canteen at MDC had "outrageous prices. That does not compare to a regular food store in the city of Alb[uquerque]." He gives examples of ramen soup costing 50 cents, a bar of soap costing $2.50, popcorn costing $1.00, and candy bars costing 80 cents. He also complains that the canteen "fail[s] to comply to help the indigent inmates," and that although he was indigent, he "didn't receive anything from canteen. They don't answer their grievances. I still have not received any help. My gums bleed every day because cantene [sic] don't give me any toothpaste . . . . They don't issue anybody anything. They are greedy." [Ex. A to Doc. 1, at 3].

After Defendants filed their Motion to Dismiss, Garcia was given the opportunity to expand on his complaints regarding the canteen. He stated in his Response that because of the "neglect and

8

abuse" he suffered at MDC, *i.e.*, "because no higene [sic] was issued to me," he now suffers from bleeding gums and gum disease.  He also says he suffers from psychological problems which result in lack of sleep and constant nausea, and "I know it has something to do with the bleeding of my gums."  [Doc. 13, at 2].

Garcia filed grievances in February and March 2007, complaining that he was indigent and would like an "indigent sack."  He stated that he had no toothpaste, soap, deodorant or underwear and needs a hygiene pack.  [Exs. to Doc. 13].  The copies presented do not include a response by MDC authorities.

Thus, Garcia's claims with respect to the canteen are twofold:  (1) that the prices were too high, and (2) that he was not issued hygiene products during the time he was indigent.  The prices Garcia lists are not exorbitantly high, but rather appear to be in line with the prices of these items in the general economy.  The facts alleged do not support Garcia's claim that he faced serious deprivations of basic human needs, and thus was subjected to cruel and unusual punishment, due to the price of food and other goods in the MDC canteen.

Garcia also complains that the canteen would not give him toothpaste when he was indigent. The Eighth Amendment requires prisoners to be provided "humane conditions of confinement guided by 'contemporary standards of decency.' " Penrod v. Zavaras, 94 F.3d 1399, 1405 (10th Cir.1996), (*quoting* Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290 (1976)). Humane conditions include the basic elements of hygiene, including reasonable access to toothpaste. Penrod, *supra*, at 1405-06.

In case similar to Garcia's, the Tenth Circuit upheld dismissal of an inmate's claim that he suffered cruel and unusual punishment, in part because he was deprived of soap and toothpaste.  He alleged resulting psoriasis of the skin and the possibility of tooth decay and other dental problems.

However, the court found these allegations to be too "vague and general" to support a claim of cruel and unusual punishment and noted that, "[w]hile prisoners must receive humane conditions of confinement, mere discomfort or temporary adverse conditions which pose no risk to health and safety do not implicate the Eighth Amendment." Gross v. Koury, 78 Fed. Appx. 690, 694 (10th Cir. 2003).

In the present case, Garcia claims that the lack of toothpaste at MDC caused bleeding gums, constant nausea, insomnia and psychological problems. He does not state how long a period he went without toothpaste, whether he deprived of toothpaste on more than one occasion, nor how many times he asked for toothpaste. He does not describe the state of his dental health prior to his incarceration at MDC. His complaints about the food prices indicate that he may have chosen to spend whatever money he had on ramen soup, popcorn and candy bars, rather than on hygiene products.

In any event, Garcia fails to state how either Defendant Dantis or Defendant Torres was personally involved in depriving him of hygiene products including toothpaste. As Defendants point out, a plaintiff cannot make out a claim under § 1983 unless he alleges personal involvement by the individuals he has named as defendants; "supervisor status by itself is insufficient to support liability." Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996). Garcia does not assert that either Dantis or Torres was personally involved in the canteen's alleged failure to provide him toothpaste at no charge, nor does he allege that these particular individuals knew about the toothpaste deprivation but nevertheless acted with "deliberate indifference" to his health and safety.

The Court finds that Garcia fails to state a claim with respect to his allegations involving the canteen at MDC.

D. Medical Care

Garcia's final claim relates to lack of medical care and delay in getting diagnostic tests. He states in his Complaint: "The medical is careless and doesn't do there [sic] job. I tested positive for TB and and [sic] medical didn't do nothing about it. I had to bug them for several months just to get x-rays done. Plus the medical rarely does sick call for inmates. On top of it they charge us for medical. We have no source of income, so it's not fair to take what little money we do have." [Ex. A. to Doc. 1, at 3]. Garcia does not ask for injunctive relief with respect to the alleged lack of medical treatment; rather, he seeks compensatory damages. [Id., at 4].

In his Response to the Order to Show Cause, Garcia does not expand on the complaints regarding his alleged tuberculosis condition and treatment. He states only "Medical at BCMDC was a irresponsible thing too. They refused to help people." [Doc. 13, at 3]. With respect to Defendants' involvement, he alleges: "John Dantis and Ronald Torres were in charge of the BCMDC. They were paid to run their jail and to give every inmate their constitutional rights. They didn't care about anybody's rights . . . . I want the courts to know that Ronald Torres and John Dantis neglected their jobs, and that's why I filed this law suit against them." [Doc. 13, at 2-3] (emphasis in original).

Under certain conditions, denial or delay of treatment by prison medical personnel can constitute cruel and unusual punishment in violation of the Eighth Amendment. Estelle v. Gamble, *supra*, 429 U.S. at 104-05. Plaintiff must demonstrate that the defendant exhibited deliberate indifference to his serious illness or injury, and deliberate indifference may be manifested by intentional denial or delay or access to medical care or intentional interference with treatment. Id..

The "deliberate indifference" standard requires that the plaintiff make a two-part showing: (1) that the medical need was "sufficiently serious," and (2) that the offending officials acted with a

11

culpable state of mind, that is, they knew about the serious medical need and intentionally refused to provide medical care or intentionally interfered with treatment. Estelle v. Gamble, *supra*; Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994).

A "serious" medical need is generally seen as one involving a life-threatening situation, or an instance in which it is apparent that delay would exacerbate the prisoner's medical problem, or could result in a lifelong handicap or a permanent loss. A delay in medical treatment does not violate a prisoner's constitutional rights unless he can show that the delay resulted in "substantial harm." Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993); White v. Colorado, 82 F.3d 364, 366-67 (10th Cir. 1996); Mta v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005). *Cf.* Thompson v. Hamilton, 127 F.3d 1109 (Table, text in Westlaw), 1997 WL 639320, at *1 (10th Cir. Oct. 14, 1997) ("Mr Thompson's claim that he went untreated for 90 days, without a showing of harm, is insufficient").

"Intentional refusal" is more than a negligent diagnosis or an inadvertent failure to provide medical care; rather, Plaintiff must show a "culpable state of mind" to support his claim of denial of a constitutional right. White v. Colorado, *supra*, at 367; Handy v. Price, 996 F.2d 1064, 1067 (10th Cir. 1993).

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle v. Gamble, *supra*, 429 U.S. at 105-06.

Garcia fails to meet the requirements of the second prong of the "deliberate indifference" test. While his alleged condition, tuberculosis, is a serious medical condition, Garcia does not state whether his TB diagnosis was made before or after he was incarcerated, and he does not say how long he had to wait for treatment nor whether he eventually received it. He does not claim that any individual person intentionally denied or interfered with his treatment. Most importantly, he does not claim any significant harm arising from the failure to provide treatment or from the alleged delay in getting x-rays.

Furthermore, Garcia does not claim that either of the Defendants named herein was aware of the TB diagnosis and thereafter failed or refused to provide him treatment. Deliberate indifference is shown only when the defendant "knows of and disregards an excessive risk to inmate health and safety." Farmer v. Brennan, *supra*, 511 U.S. at 837. A showing of mere negligence or constructive notice will not satisfy the deliberate indifference standard. Wilson v. Seiter, *supra*, 501 U.S. at 305; Farmer v. Brennan, *supra*, 511 U.S. at 837-838. Moreover, to the extent Garcia may be claiming that Dantis and Torres should be held responsible for the claimed failings of the medical staff at MDC, the Court reiterates that Defendants cannot be held liable under § 1983 on a theory of *respondeat superior*.

Although he was given an opportunity to supply more facts in his Response to the Motion to Dismiss, Garcia did not mention in his Response any adverse medical outcome related to his TB and the alleged failure to provide treatment. His only medical complaint in the Response concerns his bleeding gums and the psychological problems he says have arisen from that condition. In this, Garcia's claim stands in sharp contrast to that of the plaintiff in Erickson v. Pardus, __ U.S. __, 127 S. Ct. 2197 (2007).

In <u>Erickson</u>, the Supreme Court reversed a holding of the Tenth Circuit Court of Appeals, which had affirmed dismissal of a *pro se* prisoner's complaint asserting cruel and unusual punishment for a prison doctor's decision to discontinue treating plaintiff for Hepatitis C.  The Supreme Court disagreed with the Tenth Circuit's holding that the allegation of "substantial harm" was insufficient.  However, in <u>Erickson</u>, the prisoner's claims against the prison doctor were specific and substantial.  Plaintiff in that case claimed that Dr. Anita Bloor, the official who made the decision to discontinue treatment, was "endangering my life" by determining that plaintiff should be removed from the Hepatitis C regimen (the stated reason being that the inmate allegedly used the syringe that was meant for self-injections of medication for purposes of administering illicit drugs).  The Plaintiff further contended:

> "Defendant Bloor knew very well that Plaintiff needed treatment and that, without treatment his condition is likely to worsen" and that "Plaintiff's needs for treatment, i.e., for good health, without causing future risk and/or damage to said health/liver, were disregarded by Defendant Bloor when she removed Plaintiff from his treatment" . . . "[P]laintiff "will suffer irreparable damage if his disease goes untreated," and "that his liver is suffering irreversible damage and quite possibly death" . . . . " Here Appellant was diagnosed as needing treatment by Dr. Bloor only then to have her remove him from said."

*See*, <u>Erickson v. Pardus</u>, 198 Fed. Appx. 694, 698 (10th Cir. 2006), *rev'd,* 127 U.S. 2197.

In this case, Garcia does not claim that any delay in receiving treatment for tuberculosis at MDC resulted in substantial harm, nor does he point to any actions by Dantis or Torres indicating that they were aware of his need for treatment and intentionally refused to provide it or prevented him from getting it.

Garcia also claims that he was charged for the medical care he received at MDC.  Assuming this is true, as the Court must on a motion to dismiss, this is insufficient to state a cause of action for

14

deliberate indifference. Garcia does not allege that he was denied medical care due to the charges for service, nor that Defendants Dantis or Torres were personally involved or acted with deliberate indifference in this regard.

> If the inmate can pay for his medical care, then the state may require reimbursement. Texas has a law that adopts that policy . . . . No right described or adumbrated in the Constitution is implicated by a decision of the state to seek compensation for its actual, reasonable costs in maintaining the prisoner . . . . To succeed on a claim of cruel and unusual punishment against Brannon, plaintiff must demonstrate that she was deliberately indifferent to his medical needs. Deducting payments from his inmate trust account does not of itself exhibit deliberate indifference by Brannon. Plaintiff, furthermore, has alleged no facts that reveal how the payments affected him. He has not alleged, moreover, that he was denied medical treatment because of any inability to pay for the medical treatment. He has not shown a violation of the Eighth Amendment.

Breakiron v. Neal, 166 F. Supp. 2d 1110, 1115 (N.D. Tex. 2001). *See also*, Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 408 (9th Cir. 1985):

> Shapley alleges no facts revealing how the $3 fee requirement affected him. Shapley does not allege he was denied medical treatment because he was unable to pay the $3 fee, nor does he allege that prison officials deny medical care to other prisoners who are indigent. The complaint alleges no facts which the court could construe as deliberate indifference . . . .;

Words v. Graves, No. 95-3233-GTV, 1997 WL 298458 (D. Kan. May 28, 1997) and cases cited therein; Owens v. Sebelius, 357 F. Supp. 2d 1281 (D. Kan. 2005).

E. New Mexico Tort Claims Act

Garcia does not specifically discuss any cause of action under the New Mexico Tort Claims Act. Rather, his complaint attempts to state a claim for violation of his federal constitutional rights. However, as Defendants point out, the form which Garcia filled out and filed with the court makes

reference, in its printed portions, to the state Tort Claims Act.

Defendants argue that claims which Garcia intended to make under the Tort Claims Act, if any, should be dismissed. They note that Garcia does not allege negligent conduct on the part of Defendant Dantis or Defendant Torres specifically, as opposed to some other MDC employees, nor does he cite to any portion of the Tort Claims Act for which immunity has been waived.

The New Mexico Tort Claims Act, NMSA (1978) § 41-4-1 *et seq.*, provides that governmental entities and public employees are shielded from liability for their tortious actions, other than for the exceptions specifically listed in the statute. A plaintiff wishing to file an action under the Tort Claims Act is required to first file an administrative claim with the appropriate agency, stating the time, place and circumstances of the loss or injury. If notice has not been given as required, the court does not have jurisdiction to hear an action. NMSA (1978) § 41-4-16.

There is no indication that Garcia filed the requisite Tort Claim notice. While Garcia does not appear to be relying on the Tort Claims Act for his cause of action in this case, to the extent he may be claiming negligence on the part of Defendants Dantis and Torres, those claims are also dismissed as he failed to allege the specific exception to sovereign immunity on which he intended to rely, and because there is no indication in the record that he ever filed administrative notice of his claim.

F.  Other Defenses

The Court agrees with Defendants that Garcia does not have standing to brings claims based on alleged violations of the constitutional rights of other inmates. Swoboda v. Dubach, 992 F.2d 286, 289-90 (10th Cir. 1993). The Court need not reach Defendants' assertion that Garcia cannot ask for injunctive relief against officials of MDC when he is no longer confined in that institution. In addition, the Court need not reach Defendants' claims of qualified immunity, having found that Garcia

failed to state a claim as to any of the allegations of his complaint.

## Stay of Discovery

Along with their Motion to Dismiss, Defendants also filed a Motion to Stay Discovery [Doc. 4]. In the latter motion, they argue that discovery should be stayed pending resolution of Motion to Dismiss, because they raise the defense of qualified immunity and one purpose of that defense is to shield public officials performing discretionary duties from the burdens of pretrial discovery, as well as the burdens of trial. Garcia's Response to the Motion to Dismiss, and his Response to the Order to Show Cause, did not address the issue of a stay of discovery.

In addition to the fact that cases brought by prisoners are excluded from the usual pretrial case management procedures, D.N.M.LR-Civ. 16.3(d), the Court agrees that it would be appropriate to stay discovery in light of the claim of qualified immunity. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2737-388 (1982); Gallegos v. City and County of Denver, 984 F.2d 358, 361-62 (10th Cir. 1993). However, if the recommendation to dismiss the proceedings is adopted, Defendants' request to stay discovery will be moot. The recommendation, therefore, is that the case be dismissed and the Motion to Stay Discovery be denied, as moot.

### Recommended Disposition

That Defendants' Motion to Dismiss [Doc. 3] be granted, that the petition be dismissed with prejudice and the proceedings terminated, and that Defendants' Motion to Stay Discovery [Doc. 4] be denied as moot.

*Lorenzo F. Garcia*
Lorenzo P. Garcia
Chief United States Magistrate Judge